UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

NORTHERN DIVISION

- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,                No. 1:05:CR:209-1

                    Plaintiff,

                                         HON. R. ALLAN EDGAR

        v.

SHAWN W. LAEMMRICH,

                    Defendant.

_____/

GOVERNMENT'S SENTENCING MEMORANDUM

        This case is set for sentencing on June 21, 2006.  As explained in the

Presentence Investigation Report (PIR), the Probation Office disagrees with the parties'

recommendation regarding both restitution and the "infringement amount," the figure

used to determine the offense level pursuant to U.S.S.G. § 2B5.3.  This memorandum

is submitted to explain to the Court the government's position on these issues.

Background

        The offense conduct in this case is described in paragraphs 8 through 14 of the

PIR; the defendant's version of the offense in paragraph 20.  In sum, the defendant was

an active member of the "warez release group" MaGE, an organization dedicated to

obtaining computer software, removing any technical protections intended to prevent

unauthorized use, and then releasing the software to the universe of warez groups

known as the "warez scene."  To be given credit for releasing a software title, a warez

group must be the first to do so.  The defendant and his co-conspirators did not make

money by this activity, but used it to gain access to non-public computers containing huge quantities of pirated movies, music, games and software released by other warez groups.   This enabled them to obtain digital intellectual property for free for which they would otherwise have had to pay.

The parties and probation office agree that the applicable Sentencing Guideline is § 2B5.3.   Although that guideline incorporates the "loss" table of § 2B1.1, it is not based on traditional concepts of "loss," but rather "infringement amount."   Depending on the circumstances, "infringement amount" is defined as the retail price of either the "infringed item" or "infringing item."   U.S.S.G. § 2B5.3, Application Note 2.   Where the infringing item is a digital reproduction of the infringed item, the infringement amount is the retail value of the infringed item, multiplied by the number of infringing items.

The Parties' Infringement Amount Estimate

Before and during the 120-site takedown of April 21, 2004, the government had collected vast amounts of data.   Hundreds of computers had been seized with evidence relating to tens of thousands of pirated movies, songs, games, and software.   Many of the subjects of the investigation expressed a willingness to cooperate and plead guilty, but at the time the government did not have comprehensive retail pricing information for even a small percentage of the infringed items.   Compiling that information would consume substantial investigative resources and take many months to complete.

To provide the defendants wishing to cooperate with some certainty in plea negotiations, the government undertook to conduct a preliminary valuation of a percentage of the pirated titles.   Borrowing from the principles of U.S.S.G. § 1B1.8 (agreements not to use information regarding cooperating defendants), the government

2

proposed a method of estimating the infringement amount based on that preliminary valuation, that is, based on the information known roughly at the time of the defendant's agreement to cooperate and plead guilty.  The government further agreed to abide by that method even if subsequently-obtained information affected the calculation.  This approach both saved investigative resources and provided defendants with an incentive to quickly cooperate and agree to plead guilty.

To calculate the preliminary valuation, government personnel obtained retail prices from the Business Software Alliance, from Internet research, and from individual software companies.  Investigators had identified 191 titles released by MaGE, the warez group of which the defendant was a member.  At the time the preliminary estimate was completed, the government had obtained value information for 53 of those titles.  The total retail value of the 53 titles was approximately $13,000.  The government took the known retail price of the 53 software titles and calculated the infringement amount by multiplying the known retail price of each software title by the number of times that title was illegally copied to or from all of the warez servers for which transfer information was available to the government.   Using this method, the uploads totaled approximately $53,000 and the downloads $123,000.   Based on these figures, the parties agreed to an estimated infringement amount of between $120,000 and $200,000.

The parties believed this method was reasonable, though admittedly imperfect. First, the figure did not include all of the titles released by the group.  Second, it did not fully account for subsequent illegal copies made by those who made known downloads from identified servers.  Third, the figure included reproductions and distributions

3

between and among FTP servers controlled by warez groups, which meant that there could be double-counting for some transfers. Fourth, as group members prepared titles for release, they uploaded and downloaded the same title to the same server at each step in the process of supply, cracking, testing, packing, and release. In this respect, it is like a document that is being revised by a number of editors. Ultimately, the process will result in a single document, but it is frequently duplicated while in the drafting process. The preliminary valuation counted each such transfer as a reproduction of a separate infringing copy. Fifth, the preliminary valuation counted transfers (or reproductions) that might have been incomplete or otherwise unsuccessful.

As the presentence author has correctly demonstrated, the first two factors, standing alone, suggest that the parties' stipulated infringement amount understates the defendant's actual infringement amount. However, the last three counterbalance and compensate for that potential understatement. A couple of examples prove the point. First, the government had some concern about counting both the number of uploads and downloads as separate reproductions, though in fact they are. However, any software title must first be uploaded before it can be downloaded. To transfer a single title from one person to another through an FTP server would require two reproductions - one upload and one download - even though the sender sends and recipient receives only one infringing copy.

The software application *QNX Momentics* is another example. This was one of the software applications that was not included in the preliminary valuation but was added by the presentence investigator, who determined that the software had a retail price $8,695, more than any other valued software application released by the

4

defendant's group.  Because that application was uploaded 6 times and downloaded 7

times, the presentence author added $113,035 to the infringement amount (13 x

$8,695).  In fact, 6 of those transfers (3 uploads and 3 downloads) were transfers

between and among MaGE members on their private site, apparently as part of the

release and archive process.  If the Court were to hold that these "draft" copies of the

software should only be counted once, then 5 of the 13 transfers should not be included

in the infringement amount.  If the Court were to conclude that only downloads should

be counted, the total would have to be reduced by another 3 downloads.[1]  The

government has not undertaken a similar analysis on other titles .

Obviously, government and defense counsel assess litigation risk as part of the

plea process, especially on sentencing guideline enhancements.  *See United States v.

Yeje-Cabrera*, 430 F.3d 1, 27-28 (1st Cir 2005) (government and defense may agree on

guideline issues as part of bargaining process based on the parties' preliminary

evaluation of the evidence, though agreement not binding on the court).  The parties did

so in this case by choosing a reasonable preliminary valuation based on what was

known at the time the defendant agreed to cooperate and plead guilty.  As the fraud

and theft guideline recognizes, the "court need only make a reasonable estimate of the

---

[1]  In discussions about this issue, the probation office referred the parties to another warez release group case which examined the method of calculating infringement amount.  *United States v. Slater*, 348 F.3d 666 (7th Cir. 2003).   The case is instructive, though somewhat inapplicable because it applied earlier versions of U.S.S.G. § 2B5.3.  Of interest, the government argued that both uploads and downloads should be included.  The sentencing court counted only a single copy of each item.  The government did not challenge that holding on appeal, but the Seventh Circuit panel characterized the sentencing court's method as "exceptionally conservative" and "a considerably lower figure for the number of infringing items than the evidence might have supported."  *Id*. at 671.

loss" and, by analogy, the infringement amount.  U.S.S.G. § 2B1.1, Application Note

3(C).  The government and defense submit that their method of estimation, though

admittedly imperfect, is a reasonable one.

Restitution

The PIR concludes that restitution should be equal to the infringement amount.

The government disagrees, and views the two issues as separate, though related.  The

infringement amount is the method chosen by the Sentencing Commission as a

measurement of culpability; restitution is intended to compensate the victim for actual

losses.  The two are not the same.

The restitution statutes are not particularly helpful.  Both 18 US.C. § 3663(b)(1)

and 3663A(b)(1) provide methods of calculation for offenses against property, but it

seems clear that they contemplate circumstances in which the owner of the property is

deprived of it by the offense.  The infringing reproduction of digital intellectual property

does not deprive the owner of the use of the property.  Generally, however, "loss" for

restitution purposes means direct injury and not consequential damages.  *United States

v. George*, 403 F.3d 470, 474 (7th Cir. 2005).

The government submits that restitution should be ordered in a warez case only

where the infringement results in a displaced sale.  For example, if a downloader of a

free pirated copy software program needs the software in his business, then it is likely

that a legitimate sale was displaced by his unlawful download.  However, since all of the

pirated material in this case is downloaded for free, it is virtually impossible to determine

whether the downloader would have acquired the material if he had to pay for it.  In

cases where the defendant is charging for the software, even if at a drastically reduced

6

price, the court may order restitution equaling the defendant's gross sales proceeds, since it is clear that the illegal sale would have displaced a sale at the defendant's price. The only way to determine whether a given download displaced a sale would be to track down the downloader and determine whether the circumstances surrounding his use of the material suggests he would have been willing to pay the copyright owner for the material. That process would be excessively labor-intensive and would be unlikely to uncover reliable information about the likelihood of displaced sales. For that reason, the government recommends that restitution not be ordered for the reasons set forth in 18 U.S.C. § 3663A(c)(3)(B), namely, that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution is outweighed by the burden on the sentencing process."[2]

Respectfully submitted,

MARGARET M. CHIARA
United States Attorney

  /s/ Richard S. Murray
Date   June 9, 2006        RICHARD S. MURRAY
Assistant United States Attorney
ERIC J. KLUMB
Senior Counsel
United States Department of Justice
Computer Crime & Intellectual Property Section

---

[2] In the *Slater* case, see n.1 *infra*, the sentencing court ordered no restitution despite finding the infringement amount to be $1.4 million.

7